IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Chad E. West, | : | |
| Petitioner | : | Civil Action 2:10-cv-01177 |
| v. | : | Judge Frost |
| Rob Jeffreys, Warden, | : | Magistrate Judge Abel |
| Respondent | : | |
| | : | |

# Report and Recommendation

Petitioner Chad E. West, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Magistrate Judge on respondent's March 18, 2011 motion to dismiss (doc. 10).

## I.      Background and Procedural History

On August 13, 1999, a Franklin County grand jury indicted West on one count of rape with a sexual motivation specification, one count of kidnaping, one count of burglary, and one count of gross sexual imposition. West, through counsel, entered a plea of not guilty. After a jury trial, West was found guilty of rape, kidnaping, and burglary.[1] On January 31, 2002, West was sentenced to 13 years of imprisonment.

_____

[1]In its brief on appeal, the State recited the following facts that led to West's convictions:

West, through different counsel, timely appealed his sentence to the Tenth

Appellate District Court of Appeals, Franklin County. He argued that the trial court

improperly sentenced him to consecutive terms of actual incarceration which were

longer than the minimum term in contravention of Ohio's sentencing statutes. On

November 26, 2002, the Court of Appeals reversed the judgment of the trial court in

---

On August 3, 1999, thirteen-year-old Jimmy Conley was staying with his
father at a Knight's Inn in Grove City. Sometime during the evening
hours, Mr. Conley went to a waffle house to get something to eat, leaving
Jimmy in the room listening to music and watching cartoons.
Approximately 20 minutes later, Jimmy heard a bang as the outside door
swung open and hit the side of the wall. Jimmy looked over from the bed
and saw a large black man wearing an eye-patch enter the room. T.
103-112.

Appellant closed the door behind him. Scared, Jimmy asked appellant
what he wanted. Jimmy started to cry and backed up against the wall on
the bed. Appellant told Jimmy to take off his clothes. Jimmy refused and
told him that he could have anything he wanted and that his dad would
be back soon. Appellant grabbed Jimmy's waist, turned him around, and
jerked his pants off. Appellant threatened to cover Jimmy's face with a
sheet if he made any noises. T. 112-116.

Appellant rubbed a cream on Jimmy's butt and forced anal sex, telling
Jimmy to "Call me C." Jimmy's cries of pain were muffled because his face
was down in a blanket. When appellant was done, he wiped Jimmy off
with an old crunchy brown towel. He threatened to hurt Jimmy if he told
anyone and then left. T. 116-123.

An examination at the hospital later that night indicated abnormal redness
and swelling inside Jimmy's rectum as well as significant pain, consistent
with anal penetration. T. 42

Appellant admitted to being in the hotel room that night, but denied any
sexual conduct. T. 234

Doc. 10-1 at 50.

2

regard to the sentence and remanded the case for resentencing. On January 24, 2003, West was resentenced.

From reviewing the Franklin County Clerk of Court's online docket, respondent believes that West did not appeal his resentencing to the state Court of Appeals. West did appeal the denial of his first and second motions for new trial. The online docket of the Supreme Court of Ohio indicates that West did not appeal the results of his resentencing, nor did he appeal the denial of his first motion for new trial. West only appealed the denial of his second motion for new trial to the Ohio Supreme Court.

On July 9, 2003, West filed for a motion in request for leave to file a motion for new trial. The basis for the motion was as follows:

1.  Trial counsel failed to inform her client that he had an option to file for a motion for new trial.
2.  Trial counsel failed to move for new trial based on newly discovered evidence.
3.  Defendant could not file a motion for new trial during the pending appeal of right as this Court was without jurisdiction at that time to entertain such motion.
4.  This Court did not retain jurisdiction of this motion until the appellate court remanded this case for resentencing, whereupon, this Court now has jurisdiction to entertain this motion.
5.  Defendant did not obtain the relevant records for this motion in a diligent manner, outside his control, when his repeated request to his attorneys in possession of those records went ignored for a year, which records are incumbent upon the filing of this motion.

Respondent's exhibit 10. On August 31, 2004, the trial court overruled plaintiff's July 1, 2004 motion to compel the trial court to adjudicate his delayed motion for a new trial and his July 9, 2003 motion in request for leave to file a motion for new trial.  West

timely appealed to the Tenth Appellate District Court of Appeals on the denial of his

motion for leave to file a motion for a new trial. He set forth the following assignments

of errors:

1. The trial court erred and abused judicial discretion to deny appellant's delayed request to file a motion for new trial when appellant adequately met the criteria required by Ohio Crim. R. 33(B). (Td. No. 278, Case No. 99CR08-4368 9/1/2004)
2. The trial court erred and abused judicial discretion to deny appellant's delayed require to file a motion for new trial when appellant established a prima facia case of police and prosecutorial misconduct when withholding exculpatory evidence and suborning perjury in accord with Ohio Crim. R. 16(B)(1)(f) and Ohio Crim. R. 33(A)(2)(6) and (B). (Td. No. 278, 9/1/04)
3. The trial court erred and abused judicial discretion to deny appellant's delayed require to file a motion for new trial when appellant established a prima facia case of prosecutorial misconduct in closing arguments which is cognizable under Ohio Crim. R. 33. (Td. No. 278, 9/1/04)

Respondent's exhibit 16. On May 10, 2005, the Court of Appeals affirmed the judgment

of the trial court. (Doc. 10-2, PAGEID # 303-08) The Court of Appeals held that

petitioner had "failed to prove by clear and convincing evidence that he was

unavoidably prevented from discovering any new evidence. In fact, appellant has not

presented any 'new evidence,  but merely takes issue with matters already in the

record." (*Id.,* at PAGEID # 306.) The online docket for the Supreme Court of Ohio

indicates that West did not appeal the denial of his first motion for new trial to the

Supreme Court of Ohio.

On December 15, 2008, West filed a second motion for leave to file motion for

new trial, which was overruled by the trial court on April 22, 2009. (Doc. 10-3, PAGEID

# 390-96.) The trial court held that the documents supporting the motion were not authenticated and that he had not proved by clear and convincing evidence that the prosecution did not provide his counsel with those documents in discovery. The trial judge further found that the documents were "not of such a character that they (1) disclose a strong probability that they will change the result if a new trial is granted, (2) have been discovered since trial, (3) are such as not in the exercise of due diligence have been discovered before trial, (4) are material to the issues, (5) are not merely cumulative to former evidence, and do not merely impeach or contradict the former evidence." (Doc. 10-3, PAGEID ## 395-96.) West timely appealed to the Tenth Appellate District Court of Appeals, setting forth the following assignments of errors:

1.   The trial court abused its discretion in denying defendant's motion in request for New Trial, without ordering an Evidentiary Hearing, when defendant demonstrated by more than preponderance of the evidence that "Brady" material was withheld prior to and throughout the trial.

2.   The trial court has erred to the defendant's prejudice by denying defendant's Motion, as defendant has met the burden of proof by a preponderance of the evidence that is he is entitled to a New Trial.

Respondent's exhibit 25. On September 30, 2009, the Court of Appeals affirmed the judgment of the trial court. (Doc. 10-4, PAGEID ## 513-17.) It found that petitioner failed to explain how he was unavoidably prevented from discovering the grounds for his motion for a new trial before the deadline for filing the motion. Further, he presented no evidence that the documents were actually withheld or that he learned of them only after the deadline for filing the motion. Consequently, petitioner failed to

demonstrate by clear and convincing evidence that he was unavoidably prevented from discovering the evidence supporting his motion for a new trial. (Doc. 10-3, PAGEID # 516-17.) On October 9, 2009, West file a motion for reconsideration with the Court of Appeals, which was denied. West filed an appeal to the Ohio Supreme Court asserting that the trial court erred and abused its discretion in denying his motion for new trial. On January 27, 2010, the Ohio Supreme Court denied leave to appeal and dismissed because it did not involve any substantial constitutional question.

## II.  Petitioner's Claims

The petition alleges the following grounds for relief:

**GROUND ONE:** Trial court abused it's discretion by denying petitioner's motion in request for new trial based on unauthenticated documents.
> **Supporting Facts:** The petitioner filed a post-conviction petition in the Franklin County Court of Common Pleas after the Ohio Innocence Project obtained previously undisclosed documents of evidence from the Grove City Police Dept. evidence was unauthenticated. The court never specified which documents they were referring to as unauthenticated. Motion was denied without an evidentiary hearing.

**GROUND TWO:** The trial court abused it's discretion in denying petitioner's motion without ordering an evidentiary hearing.

> **Supporting Facts:** Petitioner demonstrated by more than a preponderance of the evidence that "Brady" material was withheld prior to and throughout the trial from the defense. The trial court never addressed the issue of "Brady", denying the petitioner's motion for unauthenticated documents. An incorrect standard of review. The petitioner's exhibits used as evidence were in fact authenticated. The motion was notarized and the police reports used had the police officer's signature as well as department letterhead. Which is the only requirements to pass the self

authentication rules of evidence. Petitioner was in compliance of the rules.

**GROUND THREE:** Withholding crucial case and pretrial evidence by the State has severely prejudiced petitioner and has precluded him from having a fair trial. In violation of *Brady v. Maryland.*

> **Supporting Facts:** In June of 2008, the Ohio Innocence Project was able to obtain previously undisclosed evidence that revealed crucial details that would have directly effected the outcome of the trial. This evidence could have been used to impeach the credibility of all of the witnesses provided by the State, and therefore would have been extremely beneficial to the petitioner before and during trial.

**GROUND FOUR:** Police misconduct and intentional perjury during trial has denied petitioner equal protection of the laws of this country. In violation of Amendment 14 of the U.S. CONSTITUTION.

> **Supporting Facts:** Det. Terri Ruslander was asked twice during trial was there dusting for finger prints done at the scene. And she responded; YES, she dusted in an attempt to recover latent prints, but none was found. But the newly discovered evidence revealed this lead Det. documented in her reports she didn't dust for fingerprints at all because the accused stated nothing was touched. The taint of this one act of perjury alone undermines reliability of the verdict.

**GROUND FIVE:** Intentional perjury committed by key/Expert witness provided by the State has resulted in a FUNDAMENTAL MISCARIAGE OF JUSTICE. Violating the 6th Amendment.

> **Supporting Facts:** Expert witness Dr. Pasha of the Children's Hospital in Columbus, Ohio testified during trial that there was no physical evidence found that could be physically seen when he conducted the exam on the accuser. The Det. and the accuser both stated during trial that the reason nothing was found during the exam is because the perp took a rag from his pocket and wiped all of the evidence off of the accuser's butt before leaving. But contained in the withheld Grand Jury summary, Det. Ruslander stated Dr. Pasha said there was stool found on the outside of the accuser's butt. A crucial detail that undermines the State's Case-in-Chief.

7

**GROUND SIX:** Intentional perjury committed by witnesses provided by the State has denied petitioner a fair trial. A 6th Amendment violation.

**Supporting Facts:** Father of the accuser (David Conley) stated during trial he remembers the police telling him they found him a block away from the hotel apparently looking for the perp who allegedly assaulted his son on the night in question. But newly discovered police reports revealed the arriving officer documented when they arrived on the scene they found the accuser and father standing in the parking lot of the hotel. Not wondering (sic) around a block away looking for someone. Yet another act of Perjury committed by a State's provided witness.

**GROUND SEVEN:** The States failure to disclose favorable evidence to the defense has precluded petitioner his rights of a fair trial. A 6th AMENDMENT violation.

**Supporting Facts:** During trial the defense made several attempts to establish a credible time of occurrence through questioning of the accuser and father of the accuser, but was unsuccessful. And because there was never even an estimated time of occurrence ever provided by the State, prior to or during trial, petitioner was unable to factually counter or defend against these false allegations with possible alibi witnesses. Contained in the withheld documents was a police report stating the time the police were called was 2:30 am. This factual time was crucial for the defense in preparing for trial.

**GROUND EIGHT:** The States failure to disclose the completed police report has severely prejudiced petitioner and has denied him equal protection of the laws. A 14th Amendment violation.

**Supporting Facts:** The accuser (James Conley) stated during trial he was unable to get away from the perp because he was laying on the bed farthest away from the entry door when the alleged assault occurred of the (north bed). But the undisclosed evidence revealed the accuser first stated he was on the bed closest to the entry door (south bed) when he was allegedly assaulted. More important, the documents revealed all of the bedding collected and used as evidence against petitioner and displayed as exhibits to the jury all came from the south bed, or the bed closest to the entry door. Because that's where accuser initially reported he was allegedly assaulted. A huge piece of the puzzle that was withheld.

8

**GROUND NINE:** Intentional perjury committed by lead Det. Terri Ruslander on the stand has denied petitioner a fair trial. A 6th Amendment violation.

> **Supporting Facts:** Det. Ruslander stated during trial the reason no physical evidence was found is because accuser stated the perp took a brown rag from his picket and cleaned all the evidence off of his butt before running out the door. But withheld Grand Jury summary reveals that the accuser initially reported to the Det. Ruslander that the alleged "perp" took a brown rag from his pocket and wiped off his penis and also took a condom off his penis with this alleged "rag" and then took the rag with him when he left. A critical detail that was withheld from the defense.

**GROUND TEN:** Prosecutorial misconduct has prejudiced the petitioner and has denied him a fair trial. A 6th Amendment violation.

> **Supporting Facts:** Prosecutor Jay Moore intentionally misstated facts in evidence to purposely mislead the jury when he stated during opening statements, closing statements and throughout the trial that the explanation of why there was no evidence found is the accuser reported the alleged "perp" wiped all of it off the accuser. This Pros. knew or should have know the initial statements given did not match what was being introduced at trial.

**GROUND ELEVEN:** Prosecutorial misconduct and suborning perjury.

> **Supporting Facts:** Asst. Pros. Jay Moore knew that Det. Ruslander was committing perjury when she testified under oath that she dusted the room to recover latent fingerprints. He never attempted to correct her testimony.

**GROUND TWELVE:** Prosecutorial misconduct and suborning perjury.

> **Supporting Facts:** Asst. Pros. Jay Moore knew Dr. Pasha was committing perjury when he testified under oath that there was no physical evidence found that could be physically seen. Jay Moore knew if it was revealed that stool was found in the initial exam, then it could no longer be said that alleged "perp" wiped clean all of the evidence.

9

**GROUND THIRTEEN:** Prosecutorial misconduct and suborning perjury.

**Supporting Facts:** Asst. pros. Jay Moore knew the father of the accuser (David Conley) was committing perjury when he testified under oath the police told him they found him a block away from the hotel. Jay Moore never attempted to correct this false testimony.

**GROUND FOURTEEN:** Prosecutorial misconduct and suborning perjury.

**Supporting Facts:** Asst. pros. Jay Moore allowed the accuser (James Conley) to change his testimony from what was initially reported on the night in question. Jay Moore knew the accuser's first statements was (sic) that he was assaulted (sexually) on the south bed. Or on the bed closest to the entry door. Asst. pros. Jay Moore knew all or the bedding collected and used (sic) as evidence against petitioner as well as displayed as exhibits in front of the jury came from the south bed. And yet he simply allowed his witness to continue to testify to a completely aultered (sic) story. Purely Unconstitutional.

### III. Evidence at Trial and Facts Relating to Petitioner's Claims

There was uncontroverted evidence at trial from which the jury could conclude beyond a reasonable doubt that David Conley was sexually assaulted. There was no question about the identity of the alleged assailant. Both David Conley and petitioner Chad West testified that the two were together during the relevant time. David accused West of assaulting him. West denied the assault. The jury had to decide which witness to believe.

Thirteen year old[2] James Conley, known to his family and friends as Jimmy[3], was staying with his father David at a Grove City, Ohio Knight's Inn. His father had just

---

[2]James was born November 6, 1985. (Tr. 134, doc. 10, PAGEID # 689.)

[3] Tr. 66 doc. 10, PAGEID # 621.

gotten a job in Columbus and didn't yet have an apartment. (Tr. 103, doc. 10, PAGEID # 658.) David Conley typically worked from 7:00 a.m. to 3:45 p.m. After work on August 3, 1999, he, his son, and friends used the motel swimming pool. As it was beginning to get dusk[4], they went to their motel room. (Tr. 69,-70 doc. 10, PAGEID # 624-25.) David Conley wanted to rest. He gave James $20 to go across the parking lot to a Waffle House to get something to eat. It was dark when Jimmy came back to the motel room.[5] *Id.* Sometime after Jimmy returned, he woke up his father.[6] (Tr. 70 doc. 10, PAGEID # 625.) On direct examination, David testified that Jimmy was gone for 30-45 minutes (Tr. 70-71 doc. 10, PAGEID # 625-26); but on cross-examination, he said it was at least half an hour and could have been as much as an hour, but not two hours.(Tr. 85 and 90, doc. 10, PAGEID ## 640 and 645.)

David Conley then went to the Waffle House. It was kind of slow there. He stayed long enough to eat two sandwiches and a drink.(Tr. 71,-72 doc. 10, PAGEID ## 626-27.) As he was returning, Jimmy met him in the area of the pool and said that he

---

[4]On direct examination, David said it was getting dusk and around 7:00 p.m. when they returned from swimming to the motel room (Tr. 70 doc. 10, PAGEID # 625.) ; but on cross-examination he said it could have been 8:30 p.m. or 9:00 p.m. when they got back to the room.(Tr. 86-87 doc. 10, PAGEID # 641-42.)

[5]James Conley testified that it was "getting dark" and was "later in the evening." (Tr. 103, doc. 10, PAGEID # 658.)

[6]David testified that Jimmy woke him up when he returned, and he then went to the Waffle House. (Tr. 70-71 doc. 10, PAGEID # 625-26.) David testified that he woke his father up 10-15 minutes after returning to the room, then he went to the Waffle House. (Tr. 107 doc. 10, PAGEID # 662.)

11

had been raped.(Tr. 72 doc. 10, PAGEID # 627.) David did not recall being a block away from the motel when the police arrived.(Tr. 91, doc. 10, PAGEID # 646.)

James Conley testified that he stayed in the motel room after his father left for the Waffle House. (Tr. 108, doc. 10, PAGEID # 663.) He was on the second bed, which was by the bathroom and furthest from the door. (Tr. 110, doc. 10, PAGEID # 665.) About 20-25 minutes after his father left, Jimmy heard a bang and the door swung open. (Tr. 111-12, doc. 10, PAGEID ## 666-67.)

Petitioner Chad West entered the room and raped James Conley. The victim testified that West "put his penis in my butt hole and it hurt . . . and then he like started moving back and forth like he wanted sex." (Tr. 120, doc. 10, PAGEID # 675.) When he was done, petitioner wiped himself and the victim off with a "nasty brown," "old crunchy towel." (Tr. 120-21, doc. 10, PAGEID # 675-76.) The sexual assault lasted 3-4 minutes. (Tr. 121, doc. 10, PAGEID # 676.) James didn't know whether petitioner ejaculated. (Tr. 122, doc. 10, PAGEID # 677.)

Jimmy went looking for his father in the motel parking lot but could not find him.  He returned briefly to the motel room, then went back to the parking lot. His father was then returning from the Waffle House. (Tr. 122-23, doc. 10, PAGEID # 677-78.) It didn't take long for the police to arrive. (Tr. 125, doc. 10, PAGEID # 680.)

James described his assailant to the police as a big black man, who was kind of fat or chunky and wore a black eye patch. (Tr. 123-24, doc. 10, PAGEID # 678-79.)  At the hospital, James Conley identified Chad West as his rapist from a photo array; and he

12

identified him as the perpetrator in the courtroom[7]. (Tr. 126-29, doc. 10, PAGEID # 681-84.)

During the early morning hours of August 4, 1999, Dr. Rzwon Pasha examined James Conley and determined that he had been assaulted rectally. There was penetration from a penis into the rectum. The assailant reportedly used a condom and also some sort of lubricant. (Tr. 40, doc. 10, PAGEID # 595.) Dr. Pasha found redness and some swelling in the small area near the rectum. (Tr. 40 and 43, doc. 10, PAGEID ## 595 and 598.)  James exhibited "significant pain on the examination but no lacerations [were] found." (Tr. 42, doc. 10, PAGEID # 597.) The findings were consistent with the history James gave of a rectal rape. (Tr. 43, doc. 10, PAGEID # 598.)

During cross-examination, defense counsel questioned Dr. Pasha about the contents of a "Suspected Sexual Abuse" report he filled out on August 4. (Tr. 48, doc. 10, PAGEID # 603.) He was in the room when the nurse collected the victim's clothing. (Tr. 50, doc. 10, PAGEID # 605.) He testified that there was no other physical evidence collected that you could see, but that there were anal swabs and some additional swabs. (Tr. 51, doc. 10, PAGEID # 606.)

Detective Terri Russlander testified on cross-examination that she had reviewed her summaries before testifying. Defense counsel requested the summaries, which the prosecutor turned over to her. After having an opportunity to review the summaries,

---

[7]During the in-court identification, James described petitioner as wearing a blue suit with a yellow tie and yellow shirt, and having a black eye patch. (Tr. 129, doc. 10, PAGEID # 684.)

defense counsel completed her cross-examination of Russlander. The detective testified that there was an indication that a lubricant was used. (Tr. 203, doc. 10, PAGEID # 758.) A hair was found but not compared to petitioner's. (Tr. 205, doc. 10, PAGEID # 760.) There was no sign of forced entry to the motel room. (Tr. 207-08, doc. 10, PAGEID ## 762-63.) The motel room was processed. Some latent prints were taken but did not recover any of value. (Tr. 208, doc. 10, PAGEID # 763.)

After Russlander's testimony, defense counsel indicated she would like to call a witness who had not been identified before. The prosecutor objected, stating that the prosecution provided discovery to the defense, but that the defense had identified Mr. West as its sole witness. Defense counsel did not dispute the fact that the prosecution had provided her with discovery. (Tr. 215-16, doc. 10, PAGEID # 770-71.)

Petitioner Chad West testified that he was born February 27, 1971 and had prior convictions for drug trafficking (cocaine) and theft. (Tr. 219 and 21, doc. 10, PAGEID ## 774 and 776.) On the day in question, West said he was "out doing drugs." James Conley approached him in the motel parking lot and asked if he could get him some weed. Intending to rip James off, West asked him how much money he had. James said he had $20 but only wanted $10 of weed. (Tr. 222, doc. 10, PAGEID # 777.) West told James the weed was at his house, and he would bring him the change. But James said he didn't want him to leave with the money. So he went with West. (Tr. 223, doc. 10, PAGEID # 778.)

As they walked to West's house, it was dark–late. It was a 15 minute walk from the motel. (Tr. 223, doc. 10, PAGEID # 778.) When they got to the house, West took the $20 and went in. Then he came back and told James that somebody had snatched the money. They walked back to the mote. (Tr. 224, doc. 10, PAGEID # 779.) James said that he had to get back to his room before his father returned or he'd be in trouble. As they approached the motel, they heard hollering. James said it was his father and took off running. (Tr. 225, doc. 10, PAGEID # 780.) West testified that James Conley's testimony was a complete lie. (Tr. 226, doc. 10, PAGEID # 781.)

On cross-examination, West testified that before they went to his house he went into the motel room with James, who was getting his wallet. (Tr. 234, doc. 10, PAGEID # 789.)

<u>Newly discovered evidence</u>. Petitioner states that the evidence supporting his second motion for a new trial was attached to the motion. (Doc. 10-3, PAGEID ## 340-60.) He asserts that he did not come in possession of this evidence until June 2008. In support of this assertion, petitioner submits a May 22, 2002 request made to the Clerks of the trial court and court of appeals for the trial transcript, discovery documents, the indictment, and other documents. (Doc. 10-3, PAGEID # 363.) He also submits a March 21, 2003 letter from Keith A. Yeazel to him transmitting the trial transcript and other documents to him. (Doc. 10-3, PAGEID # 362.) On June 6, 2007, West wrote the Grove City police requesting police reports, including witness statements "and all other documents pertaining to the above aforementioned case and defendant." (Doc. 10-3,

15

PAGEID # 363.) On October 27, 2007, the Grove City Division of Police responded that he was not entitled to the documents unless the judge who imposed sentence authorized the release of the documents. (Doc. 10-3, PAGEID # 365.) On June 11, 2008, the Ohio Innocence Project wrote to West that it was reviewing his filed. (Doc. 10-3, PAGEID # 366.) On June 24, 2008, the Ohio Innocence Project wrote to him: "We obtained your police reports . . . ." (Doc. 10-3, PAGEID # 367.) On July 1, 2008, the Ohio Innocence Project wrote a letter to petitioner transmitting a police report and other documents. (Doc. 10-3, PAGEID # 368.) Petitioner also proffers a November 20, 2008 letter from his mother to him. It states that there is no tennis court at the Knight's Inn and never was. (Doc. 10-3, PAGEID # 369.)

The alleged new evidence includes a document prepared by Detective Teri[8] Russlander titled "GRAND JURY SUMMARY." (Doc. 10-3, PAGEID # 340-41.) Among other things, it states that when police arrived David Conley and his 13 year old son were in the motel parking lot. There were no signs of forced entry. James Conley described his assailant as "male/black/heavy set with a black patch over his eye." Detective Russlander tape recorded her hospital interview of James Conley. She displayed a photo array to James. He selected West's photograph. He was 100% positive West was his assailant. (Doc. 10-3, PAGEID # 340.) The grand jury summary further

---

[8]The trial transcript spells detective Russlander's first name as "Terri," but the detective's reports use "Teri."

16

said that Dr. Pasha found "inflammation and stool outside of his butt," but no sperm was detected. (Doc. 10-3, PAGEID # 341.)

Petitioner has submitted page 2 of Detective Russlander's "Crime Scene Procedure" report. It states that the victim said he was raped by an unknown black male. There was no sign of forced entry. (Doc. 10-3, PAGEID # 342.)

Handwritten notes titled "James A. Conley - Nov 6 1985, the "door came open - unknown if shut." "Told shut up." "Took condom off." "Unsure if he ejaculated." (Doc. 10-3, PAGEID # 343.)

Petitioner's submissions also includes an August 4, 1999 witness statements by the motel clerk who was on duty when police were summoned and David Conley. (Doc. 10-3, PAGEID # 344-45.) Next is a crime scene report on a form titled "Rape/ Sexual Assault Investigation." It states that the investigators didn't dust for fingerprints because the victim reported the perpetrator didn't touch anything. (Doc. 10-3, PAGEID # 346.) There is a property slip for a rape investigation kit. It lists two sheets, a pillow case, and a bedspread from the "south bed." (Doc. 10-3, PAGEID # 347.)

Next there is a two page form that classifies the "incident" as a rape and identifies the victim as James Conley. (Doc. 10-3, PAGEID ## 348-49.) On the second page, the suspect is described as "Eye patch/heavy set build/possibly blue shirt." The report says that officers responding to the scene found David and James Conley in the Knight's Inn parking lot. (Doc. 10-3, PAGEID # 349.)

17

There is a request for a crime laboratory examination of items from the rape kit and the bedding from the motel room. (Doc. 10-3, PAGEID # 351.) An August 11, 1999 crime lab report states "semen not present." "One hair, dark brown–. . . No root was observed." "No hair was observed in the pubic combing." (Doc. 10-3, PAGEID # 350.) A crime scene photo sheet index describes the attached photos. (Doc. 10-3, PAGEID # 352-53.)

Detective Russlander's "Progress Report" (doc. 10-3, PAGEID # 354-60) states that she was called in to investigate a rape on August 4, 1999 at 3:13 a.m. She went to the scene and obtained consent to search the room at 4:30 a.m. (Doc. 10-3, PAGEID # 354.) She went to see the victim at Children's Hospital at 4:45 a.m. Dr. Pasha told her no sperm was found, but there was stool on the outside. The victim said the suspect used a condom and cream. At 5:00 a.m., Detective Russlander audio taped an interview with James Conley. (Doc. 10-3, PAGEID # 355.) No condom was found at the motel room. (Doc. 10-3, PAGEID # 356.)

### IV.  Arguments of the Parties
####    A.  Respondent

Respondent argues that West's federal habeas petition should be dismissed because it violates the statute of limitations set forth in 28 U.S.C. § 2244(d)(1). Respondent maintains that the statute of limitations expired on December 26, 2005.

Respondent argues that the date West's judgment became final by the conclusion of direct review or the expiration of the time for seeking such review is the appropriate

18

date to use to start the limitations period. Defendants maintain that the statute of limitations began to run 30 days after the trial court resentenced West because he had 30 days to appeal to the state Court of Appeals under Ohio App. R. 4(a).

Respondent argues that 28 U.S.C. § 2244(d)(D) does not apply because there was nothing in his first motion for new trial that was "new" or would constitute a factual predicate under that subsection of the statute. In affirming the denial of West's first motion for new trial, the Court of Appeals concluded that petitioner had not presented any new evidence; he merely took issue with matters already in the record. Respondent maintains that West's second motion for new trial also fails to contain a predicate fact that could not have been discovered in the exercise of due diligence that would change the start date under subsection (D). According to respondent, a review of all of the exhibits to West's second motion for new trial fails to demonstrate that anything in the matters he attached to his motion would have impacted the determination of guilt or innocence in light of all the evidence at trial. Respondent maintains that some of the evidence was clearly provided to the defense at trial. At trial, the defense objected to portions of the medical records. The state represented to the court that it had provided discovery to the defense and requested reciprocal discovery. At trial, the defense did not refute the prosecutor's statement that he provided discovery to the defense. Respondent argues that there is simply no indication in the records that the prosecution withheld any discovery to which the defense was entitled to under Ohio Crim. R. 16. The defense never made any objection on the basis that the discovery rule was not

19

complied with. As a result, respondent contends that the only appropriate date to use in this case is the date West's judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

The state Court of Appeals denied West's first motion for new trial on the basis that he failed to establish by clear and convincing evidence that he was unavoidably prevented from the discovery of any new evidence or that exculpatory evidence was withheld from him. With respect to West's second motion for new trial, the state Court of Appeals found that West failed to explain how he was unavoidably prevented from discovering these grounds prior to the expiration of the deadline for filing a motion for new trial. Respondent maintains that West's second motion for a new trial was untimely and was not properly filed under 28 U.S.C. §2244(d)(2). Respondent argues that the statute of limitations expired before the second motion for new trial was filed. The second motion for new trial did not revive the one-year period.

Respondent further argues that plaintiff is not entitled to equitable tolling because he has failed to show that he has been diligently pursuing his rights over such a substantial period of time. West failed to consistently appeal to the state appellate courts and the state supreme court. No extraordinary event prevented West from pursuing his claims. Although the statute of limitations may be tolled for a showing of actual innocence, respondent maintains that this exception does not apply here. West has failed to come forth with new, reliable evidence that would give this Court any reason to doubt the outcome. West simply cannot meet his burden to show that it is

20

more likely than not that no reasonable juror would have found petitioner guilty beyond reasonable doubt. Respondent also notes that evidence that was available and used at trial is not a proper foundation for an actual innocence claim. Respondent maintains that all the evidence in West's first motion for a new trial was presented at trial.

Petitioner's second motion for a new trial also failed to contain any new and reliable evidence of such a nature that with the evidence it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. West magnifies minor inconsistencies in the grand jury summary with the testimony at trial. None of the inconsistencies found by West meet the standard for demonstrating actual innocence that would excuse his failure to file his habeas petitioner within the one-year statue of limitations.

### B.  Petitioner

Petitioner argues that his petition is not time-barred. West relies on 28 U.S.C. § 2244(d)(1)(D). He maintains that since 2002, he diligently requested and pursued undisclosed evidence pertaining to his case. In 2004, the Ohio Innocence Project became involved in reviewing his case and obtained the complete police report and additional previously undisclosed documents for him. West maintains that these documents contained crucial facts of which the defense had been unaware and served as the basis for his second motion for new trial. Once West became aware of the new facts, he was first required to exhaust state remedies.  West argues that the statute of limitations did

21

not begin to run until January 27, 2010 when the Ohio Supreme Court declined to accept his appeal on his second motion for new trial.

Petitioner argues that the evidence upon which he relies could not have been reasonably discovered at the time of trial because of police and prosecutor misconduct. Petitioner also maintains that each witness of the prosecution committed perjury, including the police officers and expert witnesses. Petitioner contends that he was denied exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  West further argues that respondent concedes that some of the documents were not provided to the defense, and as a result, an evidentiary hearing is required to determine what documents were not provided.

West argues that a *Brady* violation occurred and that he has established that (1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defense; and (3) the evidence was material. West maintains that a complete version of the record was not provided to the defense. Specifically, he argues that the defense never received any information concerning witness statements, the time of the occurrence, the fact that stool was found on the victim, from which bed the bedding was collected from, and the detective's initial statement that she did not dust for fingerprints. West maintains all of this evidence was favorable to the defense. Despite numerous attempts of the defense to establish the time of the offense, no time was ever provided, which prevented petitioner from providing alibi witnesses. The fact that stool was found when the victim was physically examined contradicts the prosecution's

22

explanation that the perpetrator wiped off any evidence to explain the lack of physical evidence.    Petitioner maintains that if stool was present, then other evidence, including lubrication, semen and hair could also have been present.

West argues that the lead detective committed perjury and denied him equal protection of the law. At trial, Detective Ruslander testified that she dusted for fingerprints but none were found. A Grove City Police crime scene investigation document indicated that the detective did not dust for fingerprints because the accuser stated that nothing was touched. The detective changed her story to fit the victim's story that the perpetrator kicked in the door without touching anything. Because this did not make sense, she altered her testimony.

West further argues that the expert witness, Dr. Pasha of Children's Hospital, testified that no physical evidence was found when the victim was examined. The victim stated that the perpetrator used a rag to wipe him off after the assault to explain the absence of physical evidence. The grand jury summary indicated, however, that Dr. Pasha reported finding stool.

The victim's testimony at trial concerning on what bed the assault occurred was inconsistent with the newly acquired evidence. The victim's father testified that when the police arrived they found him a block from the hotel looking for the perpetrator. The police report indicates, however, that the victim and his father were in the parking lot when the police arrived. West further argues that the prosecution fabricated the story that the perpetrator wiped the victim after the assault to explain the absence of

physical evidence. The original report states that the victim reported that the perpetrator wiped his penis, not the victim. West argues that the prosecutor also engaged in misconduct when he knowingly permitted witnesses to give testimony he knew was false.

Petitioner further argues that the trial court abused its discretion when it denied his motion for leave to file a motion for new trial. West maintains that the documents were properly authenticated. He maintains that an evidentiary hearing should have been held to establish what documents were provided by the prosecution. Petitioner maintains that it was not unreasonable to have the documents for 160 days before filing his motion. He required time to familiarize himself with the documents, attempt to locate an attorney to represent him, and to learn how to proceed pro se. The letter from his mother concerning whether or not there was a tennis court at the motel was not a peripheral issue. The key issue for the jury to resolve was the credibility of the witnesses. Inconsistent statements by the victim were necessary to evaluate his credibility. Petitioner also maintains that an evidentiary hearing was necessary to demonstrate the withholding of evidence of the prosecution. West argues that the trial court erred when it concluded that West failed to establish by clear and convincing evidence that he was unavoidably prevented from discovery of evidence.

### V.   Discussion

The pertinent dates are as follows:

| January 24, 2003 | Petitioner is resentenced following his appeal. |
| February 24, 2003 | The statute of limitations begins to run, which is 30 days after West's resentencing excluding the day that begins the period. |
| July 9, 2003 | Petitioner files his first motion for new trial. |
| May 10, 2005 | The state Court of Appeals affirms trial court's denial of new trial motion; no appeal is made. |
| December 15, 2008 | Petitioner files second motion for a new trial. |
| January 27, 2010 | The Ohio Supreme Court denies leave to appeal the denial of the second motion for a new trial. |

West concedes that equitable tolling does not apply to his petition.  The issue to be resolved is whether 28 U.S.C. § 2244(d)(1)(D) applies to plaintiff's second motion for new trial.  If 28 U.S.C. § 2244(d)(1)(D) is not applicable, then the statute of limitations expired December 26, 2005.[9] Section 2244(d)(1)(D) states:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(D).

---

[9]The appropriate date to use to start the limitations period is the date West's judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). West did not appeal his resentencing, and the statute of limitations began 30 days later, not counting the day of the event, on February 24, 2003. From the expiration of the time for West to seek an appeal to the state Court of Appeals (February 24, 2003) to the date of the filing of his first motion for new trial (July 9, 2003) 135 days passed. The statute of limitations expired 230 days after the state Court of Appeals denied West's first motion for a new trial on December 26, 2005.

25

Petitioner submitted the following documents in support of his second motion for a new trial and argues that these documents constitute the factual predicate for his claims pursuant to 28 U.S.C. § 2244(d)(1)(D).

Grand Jury Summary. Petitioner argues that the grand jury summary contains several statements that contradict witness testimony at trial. The summary states that the victim stated that the perpetrator used a condom, but at trial the victim's testimony was not certain on that point. The summary also states that the perpetrator wiped off his penis, but it does not stated that he wiped the victim. The victim later testified that the perpetrator used a rag to wipe him off. Dr. Pasha, the doctor who examined the victim at Children's Hospital found stool on the victim's skin. At trial, Dr. Pasha testified that no physical evidence was found. Petitioner maintains that the presence of stool indicates that the perpetrator did not wipe off the victim. According to petitioner, this fact contradicts the prosecution's explanation for why no residue of lubricant was found on the victim. Petitioner also points to discrepancies in the grand jury summary and the victim's testimony concerning on what bed the assault took place. Petitioner maintains that had a sexual assault actually occurred, the victim would not have forgotten where in the room it happened.  *See* doc. 10-4 at 41-42.

Crime Scene Procedure Document. This document indicates that the victim reported that the assault occurred on the south bed. Doc. 10-4 at 43.

26

Handwritten Notes Titled James A. Conley, November 6, 1985. The notes indicate that the victim identified the assault as occurring on the bed closest to the door and that the perpetrator did not touch anything in the room. Doc. 10-4 at 44-45.

Grove City Division of Police Witness Statements. It is not clear what significance petitioner places on the statements. Doc. 10-4 at 46-47.

Grove City Police Investigative Bureau Rape/Sexual Assault Investigation. The report indicates that the detective did not dust for fingerprints because the victim testified that he did not touch anything. This contradicts the testimony of the detective at trial. At trial, she stated that she dusted for fingerprints but did not find any. Doc. 4-10 at 48.

Grove City Division of Police Property Slip. The property slip indicates that the bedding was taken from the south bed. At trial, the victim testified that it occurred on the other bed. Doc. 10-4 at 49.

Grove City Division of Police Incident Report. The report indicates that the victim and his father were in the parking lot when the police arrived. The victim's father testified that he had been found a block from the motel apparently looking for the perpetrator. Doc. 10-4 at 50-51.

Crime Laboratory Report. The report indicated that no spermatozoa or semen was found. No semen found on the sheets short, jeans, shorts, boxer shorts, or pillow case. One dark brown hair was collected and preserved; no root was observed.

No hair was observed in the pubic combing exhibit. No hair, blood or tissue was observed in the fingernail scraping exhibit. Doc. 10-4 at 52-53.

Grove City Police Department Photo Collection Sheet and Page of Photographs. It is not clear what significance the photographs have in supporting petitioner's habeas claim. Doc. 10-4 at 54-55.

Grove City Police Department Investigative Bureau Progress Report. The significance of this document to petitioner's claim is not clear. Doc. 10-4 at 56-62.

November 20, 2008 Letter from Mom. West's mother visited the Knight's Inn and learned that there was not a tennis court behind the motel. At trial, the victim had testified that they had played near the tennis court. Doc. 10-4 at 71.

Petitioner also submitted the following documents to demonstrate that he has acted with diligence in attempting to obtain evidence to support his claim:

- March 21, 2003 Letter from Attorney Keith Yeazel. Doc. 10-4 at 64.

- June 6, 2007 Letter to Grove City Police Department. Doc. 10-4 at 65.

- June 13, 2007 Letter from Columbus Division of Police. Doc. 10-4 at 66.

- October 12, 2007 Letter from Grove City Police Department. Doc. 10-4 at 67.

- Three Letters from the Ohio Innocence Project. Doc. 10-4 at 68-70.

Despite petitioner's reliance on 28 U.S.C. § 2244(d)(1)(D), his petition was not timely filed with this Court. First, petitioner has offered no evidence about the discovery his counsel obtained from the prosecutor. The prosecutor did provide discovery to the defense. (Tr. 215-16, doc. 10, PAGEID # 770-71.) Without knowing what

28

that discovery was, there is no way of determining whether the evidence offered by petitioner was not available to him at trial. Petitioner did not state with specificity when he obtained the documents listed above. Second, without knowing what information the defense had at trial, it is not possible to know what further evidence could have been obtained by the defense with due diligence. Consequently, as the Ohio Court of Appeals held, petitioner has failed to demonstrate the factual predicate for relying on § 2244(d)(1)(D).

Additionally, petitioner has failed to demonstrate that he acted promptly to bring his claims based on new evidence to the Ohio courts and this court. The documents petitioner relies on were apparently provided to petitioner by the Ohio Innocence Project in July 2008. *See* doc. 10-4 at 70. Petitioner did not file his second motion for new trial until December 15, 2008, 167 days after receiving the documents. The Ohio Supreme Court rejected petitioner's appeal on January 27, 2010, and petitioner waited an additional 336 days before filing his petition with this Court. Although his mother's letter was dated November 20, 2008, nothing prevented West from obtaining this information earlier.

Finally, none of the evidence petitioner relies on, even if unavailable to him at trial and even if he promptly pursued his claims based on that evidence when it was discovered by him, demonstrates that he was denied a fair trial. At the end of the day, the trial came down to who the jury believed, James Conley or Chad West. None of the allegedly withheld evidence undermined Conley's credibility or bolstered West's. The

29

issue was not whether Conley was raped but whether West was the perpetrator. Whether the rapist used a condom, what bed the rape occurred on, whether the motel room was dusted for fingerprints, whether there was feces on the victim's body, whether his father met the police in the parking lot or a block away, and whether there ever was a tennis court at the Knight's Inn are all irrelevant to the issue of whether West raped James Conley.

### VI.  Conclusion

West failed to file his petition within the one-year limitations period set forth in § 2244(d)(1)(D), his petition for habeas relief is untimely. For the reasons stated above, the Magistrate Judge RECOMMENDS that respondent's March 18, 2011 motion to dismiss (doc. 10) be GRANTED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981);

*United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373,

380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not

raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).


                     s/ Mark R. Abel
                     United States Magistrate Judge